## IRWIN v. PRUDENTIAL INS. CO. OF AMERICA.

### No. 771.

District Court, E. D. Michigan, N. D.
Dec. 12, 1933.

Carl H. Smith, of Bay City, Mich., for plaintiff.

Knappen, Uhl, Bryant & Snow, of Grand Rapids, Mich., for defendants.

TUTTLE, District Judge.

This is an action at law brought by the plaintiff, N. W. Irwin, as receiver of First National Bank, a national banking corporation of Bay City, Mich., to recover from the defendant, Prudential Insurance Company of America, on a certain insurance policy issued by the defendant, in 1920, on the life of Harold C. Young, in which policy the said bank is the beneficiary. The defendant admits that it is liable under said policy in the amount of $5,000, which sum it has already paid to the plaintiff, but refuses to pay an additional $5,000, to which the plaintiff claims to be entitled under a double indemnity accidental death benefit clause. This clause, however, contained the following proviso: "Provided, however, that no accidental death benefit shall be payable if the death of the insured resulted from suicide, whether sane or insane; from having been engaged in military or naval service or in aviation or submarine operations."

The sole question now involved is whether the death of the insured resulted "from having been engaged * * * in aviation * * * operations."

A jury was duly waived and the facts submitted to the court on an agreed statement of facts, the material recitals of which may be stated sufficiently for the purposes of this opinion as follows:

"The said Harold C. Young died as a result of injuries sustained on the 23rd day of

October, A. D. 1931, caused by the crash of a device known as a 'Glider,' in which he was riding as pilot and sole occupant, at the Clements Airport in the City of Bay City, Bay County, Michigan, on the date in question, at approximately 1:20 o'clock p. m.; * * * his regular occupation was that of physical director of the Bay City Y. M. C. A. in the City of Bay City, Michigan, and * * * instruction in gliding or teaching other persons to pilot gliders was no part of his occupation as physical director; * * * the said Harold C. Young at the time in question was not instructing any person in the operation of a glider, but * * * he did do so at times, and had organized glider clubs. * * * There is no evidence to show that the accident which caused the death of the said Harold C. Young resulted from faulty construction of the glider in which he was riding. * * * At the time in question the said Harold C. Young was riding in the said glider purely as a recreation and not as a part of his business; * * * Instruction in gliding or teaching other persons to pilot gliders was not an occupation followed by Mr. Young for monetary remuneration; * * * the said Young was interested in the operation of gliders as a sport, hobby and recreation; * * * he was enthusiastic about the sport. * * * The said Young, from October 1, 1930, to the time of his death had flown a glider approximately one hundred times, * * * for the year preceding September 24, 1930, he had flown a glider approximately one hundred and three times, but * * * at no time during said periods had he flown a glider as a business or for profit."

■ Did the death of the deceased result from "having been engaged * * * in aviation * * * operations"? I have carefully examined all of the authorities cited by counsel in their able briefs, and other decisions, but have not found any decision precisely in point or involving facts substantially similar to those presented here. A concise but excellent review and discussion of the authorities upon the general subject will be found in the recent opinion of Judge Moorman, speaking for the Circuit Court of Appeals for this circuit, in the case of First National Bank of Chattanooga v. Phoenix Mutual Life Insurance Co., 62 F.(2d) 681. The only decision which I have discovered in which the insured was actually operating the aircraft which caused his death is that of the Wisconsin Supreme Court in the case of Charette v. Prudential Insurance Company of America, 202 Wis. 470, 232 N. W. 848, 849. In that case the policy exempted the insurer from liability for double indemnity for accidental death if such death resulted from "engaging as a passenger or otherwise in submarine or aeronautic expeditions." The insured was killed by the falling of an airplane while it was being operated by him. The court, after summarizing the contentions of the parties, remarked that "this summary * * * indicates quite clearly that the meaning of the exception clause involved is not free from doubt, and that forceful reason may be given for each construction contended for." The court concludes with the statement that "some members of this court would say that, construing the language of the provision itself, the deceased is within the exception and some would say that he is not," and disposes of the case in favor of the insured on the sole ground that the language of such provision is ambiguous and therefore should be construed against the insurer. If the language here involved be in truth ambiguous, it is, of course, governed by the well-settled rule of construction which requires such ambiguous language to be interpreted in favor of the insured and against the insurer, which drafted the contract. On the other hand, it must not be forgotten that, as pointed out by Judge Hicks, speaking for the Circuit Court of Appeals for this circuit, in Kirkby v. Federal Life Insurance Co., 35 F.(2d) 126, at page 128, "Parties to insurance contracts may contract for what accidents and risks the company shall and shall not be liable. * * * If they desire to limit liability for death by accident under particular circumstances and by specific means, it is competent to do so, and, if the agreement is clear and unambiguous, the courts have no authority to create an ambiguity where none exists. They must accept the language of the contract in its plain, popular, and ordinary sense."

■ It will be noted that the provision of the policy here in question does not in terms exempt the insurer only when death results from the insured's engaging in aviation operations *as an occupation* or *for profit*. The exception broadly and expressly covers death resulting from "having been engaged * * * in aviation * * * operations." What, then, are "aviation operations," and did the death of the insured result from having been "engaged in" such operations? Giving to the quoted words, as we are bound to do, their plain, popular, ordinary meaning, it seems quite clear that the act of operating aircraft through the air is an "aviation operation" and that the person who is so operating such aircraft is "engaged in" an "aviation operation." Moreover, if the language of this provision

contemplates and involves the idea of regularity or frequency of operations, as distinguished from a single flight or even several casual flights, the facts already mentioned, including the extensive aviation activities of the deceased during the two years preceding his death, indicate, in my opinion, such regularity and frequency.

The right, therefore, of the plaintiff to a recovery here appears, in the final analysis, to be based upon its contention that the words "engaged in," as here used, mean "engaged in, as a regular occupation for profit." But it would have been easy for the parties to this insurance contract to have used that, or substantially the same, language in such contract if that had been their real intent. It is fundamental that a court, when called on to construe a contract in an action thereon, cannot modify such contract, but must take and interpret it as it was made by the parties. To construe this provision in accordance with the contention of the plaintiff would, it seems to me, require this court to read into it language which is not there and which there is nothing to indicate that the parties intended. On the contrary, there is, in my opinion, every reason to suppose that when this policy, including the exception in question, was executed, in 1920 when the known perils of aviation, whether for hire or for mere pleasure, were even greater than they now are, the purpose of such exception was to exempt the insurer, in broad terms, from liability for loss from such perils, at least in so far as they might result from the actual operation of aircraft by the insured. As was said by the Court of Appeals of New York in its opinion in the case of Gibbs v. Equitable Life Assurance Society, 256 N. Y. 208, 176 N. E. 144, 145:

"In the year 1924, when this policy was written, submarines, airplanes, dirigibles, even balloons had not been developed to the condition in which they exist today. Even now they are in a state of constant experimentation and improvement. Prior to 1924, it is true, transatlantic flights had been accomplished and at least one commercial submarine had crossed the ocean. For all that, a voyage either under the sea or in the air was not customary for the average individual. It was an extraordinary event and was thought to be and was accompanied by unusual hazards. A very small proportion of all people now living have ever been subjected to either experience. We conclude, therefore, that, in excluding from the benefit of a double indemnity death resulting to a passenger in a submarine or aeronautic expedition, the intent of the parties to the insurance contract grew out of and reflected the general belief that presence on a trip or journey in a vessel or machine of this type in regular transit constituted such a momentous adventure and was accompanied by such unusual danger and extraordinary hazard that neither party expected the policy to cover the risk of casualty."

For the reasons stated, I reach the conclusion that the death of the insured resulted from having been engaged in aviation operations, within the meaning of the provision under consideration; that, therefore, the plaintiff is not entitled to the double indemnity here sought; and that the defendant is entitled to a verdict and judgment of no cause of action. An order may be entered accordingly.